[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Description of Case
On or about July 25, 1996, the plaintiff (Lyman) and the predecessor of the defendant (AT) entered into an exclusive real estate listing agreement. The listing agreement provided for a 6 percent commission on any leases entered into during the leasing period and any additional terms thereof.
On or about November 1, 1996, AT signed a lease with a tenant (Kildare). The lease was for an additional 27 months with two-year extensions. Kildare exercised the first extension. AT paid to Lyman commissions on the lease and the extension. On or about November 2000, AT sold the subject property. On or about December 2000, Kildare executed a document with the new owner by which Kildare leased the property for the period January 1, 2001 to December 31, 2002. Lyman seeks a commission based upon the agreement between Kildare and the new owner. The defendant denies that the plaintiff is entitled to a commission and has asserted special defenses that the listing agreement does not comply with Connecticut General Statutes § 20-325a and that Ronald E. Lyman was not at all times material a licensed real estate broker.
Issues
(1) Whether the plaintiff is entitled to a real estate commission based upon Kildare's continued occupancy of the former AT property;
(2) Whether the listing agreement complies with Connecticut General Statutes § 20-325a; and
(3) Whether Ronald E. Lyman remained at all times material a licensed real estate broker.
Discussion CT Page 2690
Most of the facts alleged in the complaint dated November 8, 2002 have either been admitted or were not contested at the trial. There was put into evidence Plaintiff's Exhibit 1, which was the exclusive right to sale/lease/exchange dated July 25, 1996. The court finds that that agreement was in effect and the problem is that Anteon has not paid the real estate commission. The plaintiff claims that there is due and owing from Anteon to Lyman the sum of $9,801.76 for rent from February 1, 2001 to December 31, 2001 in the amount of $4,687.80 and rent from January 1, 2002 to December 31, 2002 in the amount of $5,113.96 for a total of $9,801.76. Mr. Lyman and Mr. FitzGerald testified to these amounts and the exhibits submitted into evidence including a listing agreement and the Kildare lease established that this is the case.
Paragraph 10 of the listing agreement provides: "Owner agrees to pay agent reasonable legal fees for collection of any commission that shall become due and payable under the terms of this agreement."
This allegation was admitted by Anteon's January 3, 2003 answer and affirmative defenses to the amended complaint. (Plaintiff's Exhibit 1.)
As to the question whether the listing agreement complies with Connecticut General Statutes § 20-325a is the question in the case. The statute provides as follows:
(b) No person licensed under the provisions of this chapter shall commence or bring any action in respect of any acts done or services rendered after October 1, 1995, as set forth in subsection (a), unless the acts and services were rendered pursuant to a contract or authorization from the person for whom the acts were done or services rendered. To satisfy the requirements of this subsection, any contract or authorization shall: (1) be in writing, (2) contain the names and addresses of the real estate broker performing the services and the name of the person or persons for whom such acts were done or services rendered, (3) show the date on which such contract was entered into or such authorizations given, (4) contain the conditions of such contract or authorization, (5) be signed by the real estate broker or the real estate broker's authorized agent, (6) if such contract or authorization pertains to any real property, include the following statements: "THE REAL ESTATE BROKER MAY BE ENTITLED TO CERTAIN LIEN RIGHTS PURSUANT TO SECTION 20-235a
OF THE CONNECTICUT GENERAL STATUTES," and (7) be signed by the person or persons for whom the acts were done or services rendered or by an agent authorized to act on behalf of such person or persons . . .
The court has reviewed the contract designated as Plaintiff's Exhibit 1 CT Page 2691 and finds that it conforms in all respects to the statute. Accordingly, the court finds for the plaintiff as against the defendant with respect to the defendant's special defense that the contract does not conform to the statute.
The listing agreement is signed by a real estate broker, Ronald Lyman. He is principal, president and sole shareholder of Lyman, he signed the listing agreement as authorized agent of Tyler E. Lyman, Inc. At the time the contract was signed, the court finds that he was licensed individually as a real estate broker and has at all relevant times been the "designated broker" or "broker designee" of Tyler E. Lyman, Inc. Accordingly, the court finds in favor of the plaintiff with respect to the second special defense filed in this case.
The December 5, 2002 letter agreement entitles the plaintiff to its commission. The listing agreement does not excuse the defendant from further commissions to the plaintiff by simply conveying the property to a third party. Although AT was free to convey the property and thereby assign its right to the leases then in effect, such conveyance does not transfer or terminate the listing agreement. The listing agreement remains the personal obligation of AT, and its corporate successor Anteon. Lyman may still recover under the listing agreement if AT's successor in interest to the property enters into any "renewals, enlargements, exercise of options, or new leases" with "this tenant," i.e. Kildare. Section 8 of the listing agreement provides AT had agreed to pay a commission of 6 percent gross rent "whenever during the term of this agreement the property shall have been leased . . . for any other price or upon such terms as may be agreed to by the owner. The 6 percent commission applied not only to the original term of the lease but to any additional terms." Thus, the parties unambiguously contemplated that a tenant exercising a lease during the term of the listing agreement might enter into any of these stated arrangements following the original term of the lease and that in any such event a commission would be payable to Lyman.
The letter agreement further provides that "Palmer Property Management is now the landlord and the lease is novated accordingly." (Plaintiff's Exhibit 11.) In fact, however, the conveyance of the property itself effectively assigned the lease to the new owner. Citing the case ofBobhic Associates Limited Partnership v. Carrabba OB-GYN Associates,Inc., 44 Conn. App. 719, 722 (1997). While the novation serves the limited purpose of having Kildare acknowledge its new landlord, there is no language in the letter agreement purporting to discharge AT from its obligations under the Kildare lease. As such, the letter agreement is not a true novation discharging AT from the lease. Flagg Energy DevelopmentCT Page 2692Corp. v. General Motors Corporation, 244 Conn. 126, 144 (1998). Mr. FitzGerald described the letter agreement as a "(minor modification)" of the Kildare lease. In any event, a novation of the lease would have had no effect on the listing agreement in effect between Lyman and AT and its successors and assigns, i.e. Anteon, because Lyman was not a party to that agreement.
Conclusion
The court then finds that the listing agreement controls. Anteon has reaped the benefit of the listing agreement by conveying the property subject to the valuable Kildare lease. The purchaser had inquired whether Kildare was a tenant in good standing and AT said that it was. A copy of the lease was provided to the purchaser. Therefore, the court finds that the assignee of Anteon continued Kildare's tenancy. Lyman's listing agreement with AT, now Anteon, provides that a commission is due and payable under these circumstances.
Accordingly, the court enters judgment in favor of the plaintiff in the amount of $9,801.76 plus attorneys fees and prejudgment interest. The court notes that the plaintiff has attached a supplemental affidavit of attorneys fees indicating that in the original affidavit of fees dated January 9, 2003, prior to the trial, the fees were $7,120 and for the time since then, $5,932.50 for a total of $13,052.50. Should the defense wish to have a hearing regarding the fees, they are required to do so within two weeks of receiving this decision. Otherwise, the fees will be as reported and those fees plus the costs must be paid by the defendant in addition to the judgment.
 D. Michael Hurley Judge Trial Referee
CT Page 2693